IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAVORN SEY,<br><br>        Petitioner,<br><br>  vs.<br><br>A.P. KANE,<br><br>        Respondent. | No. C 05-3427 JSW (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner, a prisoner of the State of California, currently incarcerated at the Correctional Training Facility at Soledad, filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms' ("BPT") denial of parole during parole suitability proceedings in 2004. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer, memorandum and exhibits in support thereof. Petitioner has filed a traverse. For the reasons stated below, the petition is denied on the merits.

## BACKGROUND

In 1993, in Los Angeles County Superior Court, Petitioner was convicted of second degree murder with the use of a firearm, and for discharging a firearm at an occupied car causing death. The trial court sentenced him to a term of twenty years to life in state prison. Petitioner's minimum parole eligibility date was August 8, 2005.

In this habeas action, Petitioner does not challenge his conviction or sentence, but

instead alleges that his due process rights were violated by the denial of parole during his initial parole suitability hearing on August 24, 2004. At the parole hearing, Petitioner appeared with counsel before a BPT panel. The Board relied, in part, upon the following account of Petitioner's commitment offense set forth in the probation officer's report:

> The defendant – prisoner – is from the Los Angeles area and belongs to a gang called LAOB or the Los Angeles Oriental Boys. He had driven from Los Angeles to San Diego – two friends, one admitted gang member and one none [sic] gang member. The defendant and his friends were staying with San Diego gang members from the OBS, Oriental Boys. Sometime on March 17, 1992 the victim had made some comments about the OBS gang members – member who had the moniker of Short Dog. Mr. Sa, S-A, the victim had asked some gang members if 'Short Dog' was dead. (Short Dog had been shot in the leg several days before. It does not appear that the victim had anything to do with that shooting.) When the victim was told that Short Dog was not dead, he made some threats concerning Short Dog. At about six p.m. the victim picked up his girlfriend, Jenny, and her girlfriend, Shelly. Both of these witnesses are juveniles. The defendant took the juveniles to an adult school location at the corner of 54th and University Avenue. He waited about (inaudible) and a half hours – He waited about one-half hour while the two girls registered. During this time the victim noted several oriental males in the area. The victim then drove the two young women to Jenny's home on Winona, Avenue. The victim and Jenny talked for about five minutes and the two women got out of the car and walked towards the apartment. They saw a group of about 10 oriental males walk towards the vehicle. They saw the male whom they knew as 'Three K' pull a long rifle – point a long rifle at the victim's head. When they heard the shot, all of the males fled and the two women went to Jenny's apartment and stayed until the police arrived. Jenny told the police officers that Three K was the one who shot Song Sa. She identified the defendant's picture from a photographic lineup, telling the police that the defendant was Three K and this was the person who she saw shoot the victim.

(*See* Respondent's Answer, Exh. 2 at 2-3, Exh. 3 at 9-11, Exh. 4 at 1-2.)

At the parole hearing, Petitioner admitted that he shot the victim, but stated that he did so out of fear for the lives of others. (Resp. Exh. 3 at 13-16.) He testified that he had seen the victim argue with and threaten his girlfriend with a gun earlier that day, and while doing so the victim also threatened others. (*Id.*) Later that day, when Petitioner and his friends approached the victim's car, Petitioner stopped one of his friends from shooting the victim because the two women were nearby. (*Id.*) Petitioner then

2

approached the victim's car to "disarm" him. (*Id.*) When the victim drove forward about twenty feet and reached under the passenger seat, Petitioner approached the car and shot him. (*Id.*)

The BPT found that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety. The presiding Commissioner explained that, in deciding to deny parole, the panel considered Petitioner's commitment offense, his prior criminal and social history, his programming and behavior since commitment, his psychiatric evaluation, his parole plans and the District Attorney's opinion. Petitioner challenged the BPT's decision in the state superior, appellate and supreme courts. The California Court of Appeal issued the last reasoned opinion denying Petitioner's claims. After the Supreme Court of California summarily denied his state habeas petition, Petitioner filed the instant federal petition for a writ of habeas corpus. The parties do not dispute that state judicial remedies were exhausted for the claims asserted in this petition.

## DISCUSSION

A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.  <u>Legal Claims and Analysis</u>

Petitioner claims that the BPT's denial of parole in 2004 violated his right to due process because the decision was not supported by sufficient evidence.

1.  <u>The BPT Decision</u>

California's parole scheme provides that the BPT "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the BPT considers various factors, including the prisoner's social history, the commitment offense and prior criminal history, and his behavior before, during and after the crime. *See* Cal. Code Regs. tit. 15, § 2402(b) – (d).

The record shows that the BPT panel afforded Petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review Petitioner's central file, allowed them to present relevant documents and provided a

4

reasoned decision denying parole. The panel concluded that Petitioner "is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Respondent Ex. 3 at 52.) The panel explained that it found that the commitment offense was "dispassionate," carried out "in a violent and brutal manner" that "demonstrates a disregard for human life." (*Id.*) The panel also found that Petitioner's criminal history was "not much," consisting of convictions for carrying a gun in public in 1990 and for having a gun in a car in 1991, which resulted in adult probation and time in county jail. (*Id.* at 53.)

The panel further found that Petitioner had a history of misconduct in prison, including rules violations in 2003 for refusing to obey an order, refusing to report to work, and possession of dangerous contraband. (*Id.*) Petitioner also had not participated in educational, vocational or self-help programs in prison, and the psychiatric report was unfavorable, finding that if released, Petitioner would present a risk for future violence to the community. (*Id.* at 53-54.) The panel also found that Petitioner did not have adequate parole plans, and that the prosecutor opposed his release. (*Id.* at 54-55.)

2.      The State Court Decisions

The state superior court found that the panel's denial of parole was supported by the evidence in the record. (Resp. Ex. 6.) The California Court of Appeal agreed, finding that the commitment offense was "dispassionate" and "callous" insofar as Petitioner shot the victim in the head at close range for "gang-related reasons." (Resp. Ex. 7.) The appellate court also found that the evidence of Petitioner's criminal history, his poor programming and misbehavior in prison, and lack of parole plans supported the denial of parole. (*Id.*) The court of appeal further found that the circumstances of the commitment offense alone were sufficient to deny parole because they exceeded the minimum necessary circumstances to sustain a second-degree murder conviction and Petitioner had not been incarcerated for a period of time that was grossly disproportionate to his culpability for the offense. (*Id.*) The California Supreme Court

1 summarily denied Petitioner's habeas petition.

### 3. The Federal Right to Due Process

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The determination does not depend on whether a parole release date has ever been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003).

Due process requires that "some evidence" support the parole board's decision finding him unsuitable for parole. *Sass*, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); *Biggs*, 334 F.3d at 915 (same); *McQuillion*, 306 F.2d at 904 (same). The "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455-56 (quoted in *Sass*, 461 F.3d at 1128). Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904. In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

The state court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, the *Hill* standard, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

In this case, Petitioner continues to pose an unreasonable risk of danger to society. There is evidence that the commitment offense was carried out in an especially cruel manner. Petitioner shot the victim in the head at close range while the victim was sitting in his car. The motive for the offense – the victim's alleged threatening remarks about "Short Dog" – was trivial compared to the seriousness of murder, and Petitioner was a gang member, while the victim was not. Petitioner had some criminal history, consisting of two gun convictions. In addition, Petitioner had continued to misbehave in prison, including receiving three disciplinary sanctions in 2003, the year before the BPT hearing. Petitioner's participation in rehabilitation programs in prison, including educational, vocational and self-help programs, was poor. Finally, Petitioner had limited parole plans, consisting of some support letters for housing, but no indication of any job plans. Such evidence amounts to "some evidence" in support of the BPT's determination that Petitioner continued to present a risk of danger if released to the public, and consequently that Petitioner was not suitable for parole.

The Ninth Circuit has noted that "over time" the BPT's "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole." *Biggs*, 334 F.3d at 916. However, in this case although the Board's denial of parole may have been in part based upon Petitioner's commitment offense, there were numerous other reasons for their denial of parole as well. In addition, the challenged parole denial here took place at Petitioner's first parole hearing, after he had served only 11 years of his sentence, nine years short of the minimum term of 20 years. As a result, this case does not yet implicate the concerns raised in *Biggs*. *See, e.g., Irons*, 479 F.3d at 661 (upholding reliance upon commitment offense to deny parole at fifth parole hearing after petitioner had served 16 years in prison); *Sass*, 461 F.3d at 1129 (same, for second and third parole hearings after petitioner had served 11 and 12 years in prison). Thus, not enough time had elapsed for the BPT's reliance on the commitment offense to raise the

due process concerns discussed in *Biggs*.

Based upon the record in this case, the state courts' determination that there was some reliable evidence to support the BPT's decision, and that Petitioner's right to due process was not violated, was not contrary to or an unreasonable application of federal law. *See, e.g., Rosas*, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); *Biggs*, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); *Morales*, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment). Accordingly, habeas relief is not warranted on this claim.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: June 18, 2008

JEFFREY S. WHITE
United States District Judge

|   |   |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | FOR THE |
| | NORTHERN DISTRICT OF CALIFORNIA |

SEY,

        Plaintiff,

  v.

KANE et al,

        Defendant.
                           /

Case Number: CV05-03427 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 18, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Savorn Sey
H69830
Correctional Training Facility
P.O. Box 689 (CW-211)
Soledad, CA 93960-0689

Dated: June 18, 2008

*Jennifer Ottolini*
Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk